# IN THE COURT OF APPEALS OF IOWA

No. 25-0687
Filed January 7, 2026

**In the Matter of N.W.,**
Alleged to be seriously Mentally Impaired,

v.

**N.W.,**
Respondent–Appellant.

Appeal from the Iowa District Court for Dubuque County,
The Honorable Thomas A. Bitter, Judge.

**AFFIRMED**

Bridget L. Goldbeck of Hughes & Trannel, P.C., Dubuque, attorney for
appellant.

Brenna Bird, Attorney General, and Sarah A. Jennings, Assistant Attorney
General, attorneys for appellee.

Considered without oral argument
by Ahlers, P.J., and Chicchelly and Sandy, JJ.
Opinion by Chicchelly, J.

**CHICCHELLY, Judge.**

N.W. appeals a district court order finding she is seriously mentally impaired and involuntarily committing her for treatment. On appeal, N.W. argues the district court erred in finding she was likely to (1) physically injure herself and (2) inflict serious emotional injury on members of her family. Upon our review, we affirm.

## BACKGROUND FACTS AND PROCEEDINGS

In March 2025, N.W. came to the attention of the Dubuque Police Department (DPD). DPD became involved when N.W. posted a picture from a shooting range after a January 2025 hospital admission. While DPD officers were correct that N.W. was hospitalized in January 2025, they were mistaken that she was involuntarily committed.

Thereafter, officers encountered N.W. at her residence where she reported her roommate was poisoning her and her son. But N.W.'s son told DPD that they had contracted norovirus and were not poisoned. Later N.W. reported her roommate for practicing witchcraft. N.W. also made several complaints against police officers.

N.W.'s son told DPD during another visit to the home that N.W. was not in compliance with her prescription medication. N.W. called DPD dispatch regarding this visit and stated that DPD officers had gone into the bathroom while her son was showering.

Based on the totality of these interactions, DPD filed an application alleging N.W. was a danger to herself and others and lacked judgmental capacity due to serious mental impairment.[1]

N.W. was ordered to the custody of MercyOne Hospital where a psychiatrist evaluated her. During this time, N.W. refused to provide a test for substance use. Because of that refusal, the hospital was unable to determine if N.W. was suffering from substance-abuse psychosis or bipolar disorder. So, the doctor diagnosed her with "unspecified psychotic disorder."

At a hearing on DPD's application, the doctor testified N.W. "definitely had manic and psychotic symptoms" during her time at the hospital. He also stated N.W. was responsive to treatment but was a danger and needs continued treatment. The magistrate found N.W. was suffering from a psychotic disorder and was a danger based on her inability to make rational decisions and ordered N.W. involuntarily committed on an outpatient basis.

N.W. appealed the magistrate's decision to the district court. After a hearing, the district court confirmed the magistrate's findings and found by clear and convincing evidence that if N.W. was "not properly treated, she is a danger to herself and others." N.W. was ordered to continue treatment on an outpatient basis. N.W. now appeals.

## STANDARD OF REVIEW

Challenges to the sufficiency of the evidence in involuntary commitment proceedings are reviewed for correction of errors at law. *In re*

---

[1] DPD based its application in part on the January 2025 commitment, but that fact was mistaken.

*V.H.*, 996 N.W.2d 530, 536 (Iowa 2023). "The allegations made in an application for involuntary commitment must be proven by clear and convincing evidence." *In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013). "Clear and convincing evidence" means that "there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *Id.* (citation omitted). The district court's findings of fact "are binding on us if supported by substantial evidence." *V.H.*, 996 N.W.2d at 536 (citation omitted).

## DISCUSSION

N.W. argues the district court erred in finding she was likely to (1) physically injure herself and (2) inflict serious emotional injury on members of her family. A person who has a "serious mental impairment" may be committed involuntarily "for a complete psychiatric evaluation and appropriate treatment." Iowa Code § 229.13(1) (2025). The definition of serious mental impairment in section 229.1(22) has three elements. *See V.H.*, 996 N.W.2d at 543. The respondent must be found to (1) have a mental illness; and, because of that illness, (2) lack sufficient judgment to make responsible decisions with respect to hospitalization or treatment, and (3) meet any of the following four grounds:

> a. Is likely to physically injure the person's self or others if allowed to remain at liberty without treatment.
>
> b. Is likely to inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with the person with mental illness if the person with mental illness is allowed to remain at liberty without treatment.
>
> c. Is unable to satisfy the person's needs for nourishment, clothing, essential medical care, or shelter so that it is likely that the person will suffer physical injury, physical debilitation, or death.

d. Has a history of lack of compliance with treatment and any of the following applies:

>   (1) Lack of compliance has been a significant factor in the need for emergency hospitalization.

>   (2) Lack of compliance has resulted in one or more acts causing serious physical injury to the person's self or others or an attempt to physically injure the person's self or others.

Iowa Code § 229.1(22). The third element is known as the "endangerment element," which we have said is necessary to justify the significant deprivation of personal liberty that results from a civil commitment. *In re L.E.B.*, No. 14-0989, 2015 WL 7575399, at *2 (Iowa Ct. App. Nov. 25, 2015). N.W. only challenges the third element, so we confine our review to the sufficiency of the evidence supporting the district court's endangerment finding. *See In re M.D.*, No. 24-1083, 2025 WL 408635, at *3 (Iowa Ct. App. Feb. 5, 2025).

The third element requires N.W. must meet one of four criteria of dangerousness. Iowa Code § 229.1(22)(a)–(d). The endangerment element "requires the threat the patient poses to herself or another be evidenced by a recent overt act, attempt, or threat." *V.H.*, 996 N.W.2d at 543 (cleaned up). "The element requires a predictive judgment, based on prior manifestations but nevertheless ultimately grounded on future rather than past danger." *Id.* (citation omitted). "Behavior that is socially unacceptable, standing alone, does not satisfy the overt act requirement." *L.E.B.*, 2015 WL 7575399, at *3 (citing *In re Mohr*, 383 N.W.2d 539, 542 (Iowa 1986)). Instead, the "'overt act' must indicate 'past aggressive behavior or threats' that manifest 'the probable commission of a dangerous act' by the respondent 'that is likely to result in physical injury.'" *V.H.*, 996 N.W.2d at 544 (quoting *In re Foster*, 426 N.W.2d 374, 378 (Iowa 1988)). "Stringent proof under the dangerousness

standard is necessary because predicting dangerousness is difficult and, at best, speculative." *Foster*, 426 N.W.2d at 377–78. Upon our review of this record, we find the evidence is sufficient to establish the dangerousness element.

The district court found N.W. met both (1) a likelihood to "physically injure the person's self or others if allowed to remain at liberty without treatment" and (2) a "likelihood to inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with the person with mental illness if the person with mental illness is allowed to remain at liberty without treatment." *Id.* § 229.1(22)(a), (b). The district court adopted the fact findings of the magistrate as follows:

> The psychiatrist testified she is a danger based on her inability to make rational decisions upon her admission. This is respondent's second admission this year. She presented with manic and psychotic symptoms upon admission. She was unwilling on both admissions to give a UA to rule out drug or alcohol induced psychosis. She was very disorganized and paranoid upon admission. She has a number of conspiracy theories about those around her. She believes the law enforcement is targeting her. She has previously required restraints. Upon her admission [N.W.] was not in a state to take care of her basic needs. She has become more stable over the course of her admission, but she continues to adhere to paranoid conspiracy theories. Officer Nugent testified that he has been working with Respondent and her family since November to address respondent's paranoia, mania, and belief in conspiracy theories. Approximately two weeks ago he received calls for service regarding Respondent over disputes with her son and roommates claiming that there were attempts to poison her son. She made continued calls for service. She was posting photos of herself at a shooting range, using hand guns and making statements about the police department and other individuals.

We find these factual findings are supported by substantial evidence and so we are bound by them. *See V.H.*, 996 N.W.2d at 536. The record before us demonstrates N.W. could not take care of herself or her sixteen-year-old

child. The psychiatrist's testimony that she could not take care of her basic needs endangered the physical and emotional health of herself and her child who relied on his parent for his basic needs. *In re C.B.*, No. 22-2089, 2023 WL 3092076, at *3 (Iowa Ct. App. Apr. 26, 2023) (discussing an expressed reluctance to take medication and reliance on another for food, shelter, and medical compliance as recent overt acts). Additionally, the need for restraints upon her admission to the hospital and the lack of impulse control is an overt act which demonstrates a likelihood to physically injure herself *See In re R.K.*, No. 23-2001, 2024 WL 3517879, at *4 (Iowa Ct. App. July 24, 2024) ("R.K.'s history of aggression and her consistent lack of impulse control does not suggest that the court erred in finding she is likely to physically injure herself or others; in fact, it proves the opposite.").

Further, the district court found that N.W's conduct demonstrated a likelihood to inflict serious emotional injury on members of the person's family or others. *See* Iowa Code § 229.1(22) (requiring the respondent to "meet[ ] any of the following criteria" (emphasis added)). We consider whether there is substantial evidence in the record to show a person is likely to inflict serious emotional injury on others who cannot avoid contact with the person if the person is allowed to remain without treatment. *See In re C.D.*, No. 16-1491, 2017 WL 706389, at *3 (Iowa Ct. App. Feb. 22, 2017). Our court has previously stated, "Emotional injury is not precisely delineated, but it would include, for example, serious disruption of family relations leading to depression or nervous breakdown of family members, physical violence on the part of others, or medically diagnosable complications." *In re J.K.*, No. 15-1621, 2016 WL 3002811, at *5 (Iowa Ct. App. May 25, 2016) (quoting Randall Bezanson, Involuntary Treatment of the Mentally Ill in Iowa: The 1975 Legislation, 61 Iowa L. Rev. 262, 302 (1975)).

Based on our review, we agree that there is sufficient evidence to show N.W. posed an emotional risk to her son supported by an overt act. The recent overt act may be an act, attempt, or threat. *See Mohr*, 383 N.W.2d at 542. At the outset, we find N.W's son cannot avoid contact with her. N.W. is his primary caretaker, and his father has passed away. At sixteen years old, it is not possible for him to wholly avoid contact with his mother. Further, this record demonstrates that N.W poses a risk of serious emotional injury to her son. N.W.'s discussion of a number of conspiracy theories about those around her including that her roommate had positioned N.W. and her son pose a risk of serious emotional injury to her son. *See C.D.*, 2017 WL 706389, at *3–4 ("The evidence showed the serious emotional harm the child suffered and was likely to suffer in the future, which was causally connected to the mother's statements [about conspiracy theories]."). Additionally, she believes the law enforcement is targeting her which has led to near daily law enforcement contacts in their home. Law enforcement officers observed "a lot of conflict between her family and her." All of these instances demonstrate circumstances which pose a likelihood of serious emotional injury to N.W's son. *J.K.*, 2016 WL 3002811, at *5 Accordingly, we affirm the district court's finding that N.W's conduct demonstrated a likelihood to inflict serious emotional injury to her son.

## CONCLUSION

Because substantial evidence supports the district court's finding that N.W. is likely to physically injure the person's self or others if allowed to remain at liberty without treatment, we affirm.

**AFFIRMED.**